```
                  UNITED STATES DISTRICT COURT
                            FOR THE
                       DISTRICT OF VERMONT

LUCIE AUGER,                       :
                                   :
      Plaintiff,                   :
                                   :
      v.                           :    Case No. 2:09-cv-256
                                   :
JOSEPH HAEBERLE,                   :
                                   :
      Defendant.                   :
                                   :
```

### Memorandum Opinion and Order

In this action alleging that Defendant landlord Joseph Haeberle's negligence caused Plaintiff tenant Lucie Auger, a Canadian citizen, to suffer severe burns when she was scalded by hot water, Haeberle has moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Haeberle has also moved this Court to join Régie de l'assurance maladie du Québec ("RAMQ"), the organization that administers the public health plan in the province of Quebec, as a real party in interest in this action; or in the alternative to preclude Auger from recovering for any medical services provided in Canada.  For the reasons that follow, both motions, ECF Nos. 33 & 34, are **denied.**

### Factual Background[1]

On April 1, 2008, Auger, who suffers from multiple sclerosis, and her companion Larry Mann rented a house in Alburg,

---

[1] The following facts are either undisputed or taken in the light most favorable to Auger, as the nonmoving party.

Vermont, owned by Haeberle.  On April 21, 2008, some few minutes before 5:50 p.m., Auger took a shower.  The shower was a standard tub-shower combination with a single handle to adjust the mix of hot and cold water.  Mann turned on and adjusted the water temperature for her, and assisted her into the tub.  Mann left the bathroom and went outside.  Auger lost control of her muscles and slowly collapsed into the tub.  When Mann returned to the bathroom a few minutes later he found Auger lying on her left side in the tub in several inches of scalding hot water.  She was barely conscious.  The water was pouring out of the tub faucet instead of the shower head, and the drain plug was engaged.  Mann turned off the water.  Although the water had been at an acceptable temperature for bathing when Auger began her shower, the temperature control knob was turned all the way to hot when Mann shut off the water.  He remembers disengaging the drain plug, but the water had not drained by the time emergency personnel arrived.

Mann called 911 at 5:51 p.m., and emergency personnel arrived at 5:59 p.m.  The water was still hot enough to burn the hands of the emergency personnel who lifted her out of the water approximately five minutes later.  They were wearing latex gloves.

Auger does not remember anything about the accident.  EMS records indicate that she said she believed that her "foot kicked

the hot water on." She suffered third-degree burns over sixty percent of her body.

When Mann later checked the controls on the hot water heater he found that it was set at its hottest temperature setting. There is no record that anyone tested the temperature of the hot water at the faucet or in the tub at the time of the accident.

Auger's medical expert, Dr. Jay Yelon, observed that the medical records suggest a variety of ways that the accident may have occurred. He stated that it would be nearly impossible to estimate the temperature of the water at the time Auger was injured, or the length of time she remained in contact with the water. In the opinion of Haeberle's medical expert, Dr. John Fortune, Auger's burns are as consistent with having been exposed for twenty minutes to water having a temperature of 120 degrees as with having been exposed to water having a higher temperature.

The Vermont Rental Housing Health Code[2] requires that tub-shower combinations must be plumbed to be able to achieve a hot water temperature at the faucet that is greater than or equal to 100 degrees Fahrenheit and less than 120 degrees Fahrenheit. Liebert Dep. 8:1-5, Feb. 16, 2011. The Vermont Plumbing Rules permit water to be supplied to plumbing fixtures at a maximum temperature of 120 degrees Fahrenheit unless otherwise required

---

[2] Haeberle's expert testified that the Alburg house was covered by the Rental Housing Health Code. Liebert Dep. 6:15-18, Feb. 16, 2011.

by law.  2004 Vermont Plumbing Rules 7 (ECF No. 33-10 at 2).

At the time of this accident the Plumbing Rules required water heaters to maintain a minimum temperature of 140 degrees Fahrenheit.  Liebert Dep. 30:3-5.  The typical way to achieve this reduction in temperature at the faucet is to install a thermostatic mixing valve, a device that blends hot water with cold water so that it arrives at the faucet at a lower temperature than that set at the water heater.  This feature reduces the risk of scalding injuries.  The code now requires all new water heater installations in the state to include a mixing valve, although it did not at the time Auger was injured.  The hot water heater in the Alburg house did not have a mixing valve.

Auger was transported to Northwestern Medical Center in St. Albans, Vermont, where she was evaluated, resuscitated and stabilized.  Because of the magnitude and severity of her injury she was transferred to Fletcher Allen Health Care in Burlington, Vermont, where she was admitted to the Surgical Intensive Care Unit.  Because Auger is a Canadian citizen, she was then flown to Le Centre des grands brulés at Centre hospitalier de l'Université de Montréal for surgery and subsequently transferred to Hôpital de réadaptation Villa Medica in Montreal for rehabilitative services.  Auger underwent ten operations over a two-month period, and remained at the rehabilitation center for more than three months.

**I.   Motion for Summary Judgment**

   **A.   Standard**

Summary judgment is appropriate on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a district court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 255).

   **B.   Analysis**

In Vermont,[3] the elements of a common law negligence action

---

   [3] In this negligence case in which jurisdiction is based on diversity of citizenship, the Court applies the substantive law of the State of Vermont. *Erie R. Co. v. Tompkins*, 304 U.S. 64,

are:
> (1) the defendant must owe a legal *duty* to conform to a certain standard of conduct so as to protect the plaintiff from an unreasonable risk of harm; (2) the defendant must have committed a *breach* of this duty by failing to conform to the standard of conduct required; (3) the defendant's conduct must be the *proximate cause* of the plaintiff's injury; and (4) the plaintiff must have suffered actual loss or *damage*.

*Langle v. Kurkul*, 510 A.2d 1301, 1304 (Vt. 1986). For purposes of his summary judgment motion, Haeberle concedes that he owed a duty to Auger, that he breached that duty, and that Auger suffered damage. He argues that nothing he did or failed to do was the proximate cause of Auger's injuries.

"'The law of proximate cause calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences.'" *Roberts v. State*, 514 A.2d 694, 695 (Vt. 1986) (quoting *Rivers v. State*, 328 A.2d 398, 400 (Vt. 1974)). It "is ordinarily an issue to be resolved by the jury unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Id.* at 696 (quotation marks and citation omitted).

Auger's injuries resulted from her immersion in several inches of standing scalding hot water. She claims that Haeberle is responsible for having installed and calibrated a hot water

---

78 (1938).

heater that permitted water to emerge from the faucet at a temperature hot enough to permit her to sustain such injury. Haeberle relies on his medical expert's observation that an individual may sustain a third-degree burn from ten minutes of exposure to 120 degree water, and therefore argues that a properly calibrated water heater with a mixing valve would not have prevented Auger's accident.

A central issue in this case at trial will be the temperature of the water at the time Auger was injured. In order to establish that Haeberle breached a duty to Auger, Auger will have to prove that the temperature of the hot water supplied to the tub equaled[4] or exceeded[5] 120 degrees Fahrenheit. The medical experts essentially agree that it is not possible to determine whether the water temperature equaled or exceeded 120 degrees from the nature and extent of Auger's injuries, given that the length of time she was exposed to the water must be approximated. The parties' plumbing experts have conducted tests of the hot water at the property, and presumably that evidence, in addition to the totality of the circumstances of the accident, will enable a jury to determine whether Auger has proven that the temperature of the water exceeded 120 degrees. Haeberle has conceded breach of duty for purposes of this summary judgment

---

[4] According to the Vermont Rental Housing Health Code.

[5] According to the Vermont Plumbing Rules.

motion, however, and that issue is not currently before the Court.

In order to survive summary judgment on proximate cause, Auger must have evidence from which a jury could conclude that Haeberle set the temperature on the hot water heater so that the hot water at the faucet was hotter than the temperature permitted, and that this conduct was a proximate cause of her injuries.

A reasonable jury may conclude, based on all the circumstances--including the fact that the standing water caused burns through latex gloves some ten to fifteen minutes after the water was shut off--that Haeberle was responsible for setting the water temperature at an unreasonably and dangerously hot level, that resulted in a hot water temperature at the faucet that exceeded 120 degrees Fahrenheit. A reasonable jury may also conclude that a combination of proximate causes produced Auger's injuries. *See id.* (quoting *Choiniere v. Sulikowski*, 229 A.3d 305, 308 (Vt. 1967)). This combination may include, for example, any of the following: scalding hot water, Auger's collapse, the alteration to the temperature and force of the water after her collapse, Mann's being out of earshot, the tub failing to drain. A reasonable jury may conclude that Haeberle has established a comparative negligence defense, requiring an apportionment of damages. *See* Vt. Stat. Ann. tit. 12, § 1036; *Barber v.*

*LaFromboise*, 2006 VT 77, ¶ 7, 980 A.2d 436, 440.  A reasonable jury may find that Auger cannot prove by a preponderance of the evidence how hot the water was, and conclude that she has not proven her case against Haeberle.  A reasonable jury may conclude that the hot water temperature at the tub faucet was within acceptable limits.  This Court is therefore unable to conclude as a matter of law that all reasonable minds would conclude that Auger's collapse rather than the temperature of the hot water was the sole proximate cause of her injuries.[6]

Accordingly, Haeberle is not entitled to summary judgment on the issue of proximate cause.

**II.  Motion to Join Real Party in Interest**

Haeberle has moved, pursuant to Rules 17 and 19 of the Federal Rules of Civil Procedure, for RAMQ to be joined as the real party in interest with regard to Auger's claim for recovery of medical services obtained in Canada.

The motion is untimely.  According to the discovery order in this case, all motions for joinder of parties and amendments to the pleadings were to have been filed by July 1, 2010.  Haeberle's motion was filed January 31, 2011.  Although Haeberle

---

[6] Haeberle argues that his conduct did not proximately cause Auger's injuries because the circumstances under which she fell were not foreseeable.  Foreseeability does not enter into the determination of proximate cause, which "is described as cause-in-fact, resulting from the negligent act."  *Rivers v. State*, 328 A.2d 398, 400 (Vt. 1974) (citing *Dodge v. McArthur*, 223 A.2d 453, 454 (1966)).

9

protests in a footnote that he does not seek joinder, but the naming of the real party in interest, and that in any event "he did not have possession of the documents necessary to move the Court in this way until recently," Def.'s Reply 3 n.1, (ECF No. 38), he relies on Federal Rule 19(a) to argue that RAMQ is a required party who should be joined.  *See* Def.'s Mot. to Join Real Party in Interest 2-3 (ECF No. 34).  Moreover, he does not suggest how RAMQ is to be named in the lawsuit without amending the pleadings, the deadline for which also lapsed long before he filed his motion.  He does not specify why documents were necessary in order for him to file his motion, nor whether he was aware of the fact that Auger received most of the treatment for her injuries in Quebec, and that therefore RAMQ was a potential partial subrogee in this case, prior to the deadline.

    Although its untimeliness is sufficient grounds to deny the motion, the motion is denied on the merits as well.  Quebec's Health Insurance Act provides that RAMQ shall be subrogated to the right of recovery of any person who receives health insurance benefits against a third party tortfeasor.  R.S.Q. c. A-29, s.18(1).[7]  RAMQ is therefore a partial subrogee to the extent of

---

    [7] Section 18(1) of the Health Insurance Act provides: The Board shall be ipso facto subrogated in the right of recovery of any person who benefits from insured services, against any third person to the extent of the insured services furnished or to be furnished in respect of injury caused by the fault of such third person.  The person must furnish to the Board any

Auger's Canadian medical bills. In cases of partial subrogation, both insured and insurer are "necessary" parties, but they are not "indispensable" parties, for purposes of determining whether joinder is required under Rule 19(a). *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (citing *United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 382 & n.19 (1949)); *accord St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 81 (2d Cir. 2005) ("[W]here the insurer has not fully compensated the insured for its loss, either party may sue without the presence of the other.") (quotation marks and citation omitted).

> Rule 19(a) provides in relevant part that
>
> (1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Haeberle argues that he runs the risk of incurring a double obligation: Auger's claim for medical services obtained in Canada, and RAMQ's subrogation claim for the same services.

---

information required to establish the liability of the third person or the claim of the Board.
R.S.Q. c. A-29, s. 18(1), *available at* http://www.canlii.org/en/qc/laws/stat/rsq-c-a-29/latest/rsq-c-a-29.html.

Quebec's Health Insurance Act prohibits a tortfeasor's insurer from discharging its obligation to indemnify the tortfeasor without compensating RAMQ.  *Id.* s.18(3).[8]  The statute also provides that a release issued by a person receiving health insurance benefits that purports to discharge a third person's or an insurer's liability "is without effect and is deemed unwritten. . . .," and gives RAMQ a right of action resulting from the subrogation.  *Id.* s.18(4), (5).[9] [10]

Under Vermont law,[11] however, a waiver or release given by

---

[8]  Section 18(3) provides:  An insurer of a third person's liability shall not discharge his obligation to indemnify the latter of his liability to the Board under this section, otherwise than by payment to the Board.  R.S.Q. c. A-29, s. 18(3).

[9]  Section 18(4) provides:  An undertaking by a person benefiting from insured services to discharge a third person's or an insurer's liability to the Board under this section or to save them harmless from such liability is without effect and is deemed unwritten in any agreement, transaction or release.  R.S.Q. c. A-29, s. 18(4).

[10]  Section 18(5) provides:
> The rights acquired by the effect of the subrogation contemplated in this section shall form part of the domain of the State from and after the time when such rights arise, and shall be subject to the rules applicable to the rights forming part thereof; however, the right of action resulting therefrom shall be prescribed three years from the date on which the Board became aware of the facts giving rise thereto.

R.S.Q. c. A-29, s. 18(5).

[11]  Although the determination of the necessity of joining a real party in interest is an issue of procedural rather than substantive law, "state law controls the underlying substantive right of an insured to recovery."  *Brocklesby Transp. v. E. States Escort Servs.*, 904 F.2d 131, 133 (2d Cir. 1990).

an insured to a tortfeasor is enforceable, and RAMQ may only proceed against Haeberle or his insurer if the release was obtained with knowledge that RAMQ had already provided benefits. *See Utica Nat. Ins. Co. v. Cyr*, 2007 VT 134A, ¶¶ 9-10, 17, 945 A.2d 361, 363-64, 366.  Given that Haeberle is fully aware of RAMQ's subrogation claim, and is able to protect RAMQ's subrogation right as well as avoid double obligation simply by writing a three-party check for the subrogated amount should it be found liable, it runs no real risk of a double obligation, except by its own failure to protect RAMQ's known subrogation right.  *See id.* ¶ 18, 945 A.2d at 366.

Accordingly, Haeberle has not shown that RAMQ must be joined as a real party in interest.

### III. Motion in Limine Regarding Recovery of Medical Bills Incurred in Canada

In the alternative, Haeberle seeks an order precluding Auger from recovering for the cost of medical services received in Canada.  "In tort, compensation is provided, as nearly as possible, to restore a person damaged to the position [she] would have been in had the wrong not been committed." *My Sister's Place v. City of Burlington*, 433 A.2d 275, 281 (Vt. 1981).  "[A] tortfeasor is assessed for damages which directly or proximately result from the wrong committed." *Id.*  Damages include the reasonable value of medical services.  *Smedberg v. Detlef's Custodial Serv., Inc.*, 2007 VT 99, ¶ 37, 940 A.2d 674, 685.

"The collateral source rule allows a plaintiff full recovery against a tortfeasor even where [she] is otherwise compensated by a source independent of the tortfeasor." *Coty v. Ramsey Assocs., Inc.*, 546 A.2d 196, 204 (Vt. 1988). Compensation may take the form of a benefit or a payment, *see id.*; the purpose of the rule is "to prevent the wrongdoer from escaping liability for his or her misconduct." *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 32, 956 A.2d 528, 542; *accord My Sister's Place*, 433 A.2d at 281 (acknowledging that the collateral source rule applies "in cases where the collateral source would be recompensed from the total recovery through subrogation . . .").

Haeberle's request for an order precluding Auger from recovering for her medical expenses incurred in Canada is therefore **denied.**

## Conclusion

Haeberle's Motion for Summary Judgment (ECF No. 33) and Motion to Join Real Party in Interest, or in the Alternative, Motion in Limine Regarding Plaintiff's Ability to Recover for Medical Bills (ECF No. 34) are **denied.**

Dated at Burlington, Vermont this 7th day of June, 2011.

                                        <u>/s/ William K. Sessions III</u>
                                        William K. Sessions III
                                        District Judge